IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-0260-RN

**Angela Hubbard Chavis**,

        Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

        Defendant.

**Memorandum & Order**

      Plaintiff Angela Hubbard Chavis instituted this action on December 5, 2013 to challenge the denial of her application for supplemental security income. Chavis claims that Administrative Law Judge Edward T. Morriss erred in his determination by relying on the Medical –Vocational Guidelines (commonly known as the Grids) to determine that she was not disabled and by failing to obtain testimony from a vocational expert prior to rendering his decision. Both Chavis and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed dispositive motions seeking a judgment in their favor. After reviewing the parties' arguments, the court has determined[1] that Chavis' Motion for Judgment on the Pleadings will be denied, Colvin's Motion for Judgment on the Pleadings will be granted, and the Commissioner's final decision is affirmed.

**I. Background**

      On April 6, 2010, Chavis filed an application for supplemental security income on the basis of a disability that allegedly began on June 1, 1993. After her claim was denied at both the initial stage and upon reconsideration, Chavis appeared before ALJ Morriss for a hearing to

---

[1] The parties have consented to jurisdiction by a United States Magistrate Judge for all proceedings, including the entry of a final judgment. 28 U.S.C. §636(c).

determine whether she was entitled to benefits. After the hearing, ALJ Morriss determined that Chavis was not entitled to benefits because she was not disabled. (Tr. at 17-27.)

Although Chavis lived with several severe impairments, ALJ Morriss found that she had the residual functional capacity to perform light work. (*Id.* at 22.) Specifically, Morriss determined that Chavis could lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit for 6 hours out of an 8 hour work day; and could perform frequent handling and fingering activities. (*Id.*) Chavis's light work was subject to two specific limitations. First, she would have to avoid concentrated exposure to heat, humidity, fumes, dust, odor, gases and poor ventilation. (*Id.*) Second, she could have occasional contact with coworkers and supervisors, but no significant contact with the public. (*Id.*)

Based upon these findings and Chavis's age, education, work experience, and residual functional capacity ("RFC"), Morriss held that Medical-Vocational Guideline Rule 202.10 required a finding that she was not disabled. (*Id.* at 27.) Morriss determined that he could rely on the Grids despite Chavis' non-exertional limitations because they had little or no effect on the job base for light work. (*Id.*) The ALJ concluded that the concentrated exposure to heat and humidity was not present in most jobs and the limitation regarding no significant contact with the public would not preclude Chavis from performing unskilled work. (*Id.*)

After unsuccessfully seeking review by the Appeals Council, Chavis commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on December 5, 2013. [D.E. 1].

## II. STANDARD OF REVIEW

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g);

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chafer*, 99 F.3d 635, 638 (4th Cir. 1996).

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

## III. ANALYSIS

Chavis contends that the ALJ erred at step five, arguing that the finding of non-exertional impairment at step two precludes reliance on the Grids at step five. She asserts that the Commissioner failed to carry her burden at step five by identifying jobs in the national economy that she is capable of performing, given her age, education, work experience, and RFC.

While a claimant has the burden at steps one through four, it is the Commissioner's burden at step five to show that work the claimant is capable of performing is available. *Pass v. Id.* (citing *Hunter v. Sullivan,* 993 F.2d 21, 35 (4th Cir. 1992)). "The Commissioner may meet this burden by relying on the Medical–Vocational Guidelines (Grids) or by calling a vocational expert [("VE")] to testify." *Aistrop v. Barnhart*, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R. § 404.1566)). The Grids are published tables that take administrative notice of the number of unskilled jobs at each exertional level in the national economy. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a).

When a claimant suffers solely from exertional impairments, the Grids may satisfy the Commissioner's burden of coming forward with evidence as to the availability of jobs the claimant can perform. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). When a claimant: (1) suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. *See Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *Hammond v. Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985); *Cook v. Chater*, 901 F. Supp. 971 (D. Md. 1995); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h).

However, not every non-exertional limitation rises to the level of a non-exertional impairment and the latter will only be found where there is substantial evidence to support the finding that the non-exertional limitation affects an individual's residual capacity to perform work of which he is exertionally capable. *Walker*, 889 F.2d at 49; *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984). The Grids may still be used to direct a finding of not disabled where non-exertional impairments, even severe, do not significantly reduce a claimant's occupational base. *See Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).

Here, the ALJ noted Chavis's non-exertional limitations and concluded that they had little or no effect on the occupational base of unskilled light work. (Tr. at 27). With respect to these non-exertional impairments, courts have held that a limitation to avoid concentrated exposure to heat, humidity, fumes, dust, odor, gases and poor ventilation does not significantly erode the occupational base for light work and, therefore, reliance on the Grids is permissible. *See* SSR 85–15 ("Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc."); SSR 96–9p, SSR 83–12 and SSR 83–14 (the need to avoid concentrated exposure to air pollutants/irritants does not significantly erode the unskilled occupational base); *Aponte v. Commissioner*, No. SAG-11-2446, 2013 WL 3216859, at *3 (D. Md. June 24, 2013) (claimant's environmental limitations, barring only exposure to "concentrated irritants, pollutants, odors," did not significantly erode the occupational base).

Additionally, her limitations directing no significant contact with coworkers or supervisors and permitting only frequent handling and fingering have also been found to present no effect on the occupational base for unskilled light work. *See Smith v. Colvin*, No. 3:13-CV-

5

570-MOC, 2014 WL 2159122, at *4 (W.D.N.C. May 23, 2014) (unpublished) ("The ALJ concluded [the] plaintiff could do medium unskilled work with limited public contact .... The ALJ reasoned [that] unskilled work usually involves working with things and not the public, a finding which finds support in the regulations and case law within the Fourth Circuit.... The ALJ was not obligated to bring in a VE and properly relied on the Grids in finding [the] plaintiff not disabled." (internal citation omitted)); *Scott v. Colvin*, No. 1:12-CV-170-RJC, 2013 WL 3927607, at *6–7 (W.D.N.C. July 29, 2013) (unpublished) (limitation to simple, unskilled, entry level work that allows for less stress work without public contact or significant interaction with others would not significantly erode the occupational base represented by the Grids). *See also* SSR 96-6p (noting that a *significant* manipulative limitation in reaching or handling may eliminate a large number of occupations) (emphasis added); *Booker v. Commissioner, Social Sec. Admin.*, No. SAG-13-315, 2013 WL 5595420, at *2 (D. Md. Oct. 10, 2013) (finding no error in ALJ's reliance on the Grids at step five because limitation to frequent reaching with non-dominant shoulder did not significantly erode the occupational base for light work); *Price v. Astrue*, No. 2012 WL 174797, at * 6 (D. Or. Jan. 17, 2012) (declining to find that a limitation to frequent handling constitutes a significant limitation so as to preclude the full range of unskilled sedentary work in the context of SSR 96–9p).

In support of her argument, Chavis cites *Wooldridge v. Bowen*, 816 F.2d 157 (4th Cir 1987), for the proposition that her nonexertional environmental limitations preclude reliance on the Grids so as to conclude that a claimant is not disabled. In *Wooldridge*, ALJ found that, due to COPD, the claimant "should avoid temperature extremes, dust, fumes, humidity and environments where major pulmonary irritants are present[,]" and applied the Grids to conclude she was not disabled. *Id.* at 159. The Fourth Circuit held that the claimant's environmental

restrictions precluded the Grids automatic application and remanded for further evidence from a VE. However, as the Defendant notes, *Wooldridge* involved a limitation to avoid all pulmonary irritants, whereas the present matter concerns avoidance of concentrated exposure to such irritants. Accordingly, its holding distinguishable from the present issue.

Inasmuch as the ALJ concluded that the non-exertional limitations had little or no impact on the occupational base, and determined that a finding of "not disabled" was directed by Rule 202.10, the Commissioner's step five burden was satisfied. *See Hays v. Sullivan*, 907 F.2d 1453, 1458 (4th Cir. 1990) (noting that the Grids may satisfy the Commissioner's burden of coming forward with evidence as to the availability of jobs the claimant can perform). Therefore, testimony from a VE identifying jobs available in the national economy compatible with Chavis's RFC was not required. *See* SSR 83–14, 1983 WL 31254, at *6 (when a claimant has a combination of nonexertional and exertional limitations and it is clear that the nonexertional limitations will have little effect upon the exertional occupational base, the finding directed by the Grids is sufficient and VE testimony is unnecessary); *Smith v. Schweiker*, 719 at 725 (holding reliance on the Grids is precluded only if the nonexertional condition affects claimant's RFC to perform work of which he is exertionally capable); *see also See Woody v. Barnhart,* 326 F. Supp. 2d 744, 746 (W.D. Va. 2004) (finding no ALJ error in failing to obtain VE testimony about occupations available for a person suffering from non-exertional limitations where the ALJ made a specific finding that the claimant's limitations did not amount to nonexertional impairments); *Rogers v. Barnhart*, 207 F. Supp. 2d 885, 896 (W.D.N.C. 2002) (noting the ALJ was not obligated to employ a VE because claimant's nonexertional impairments did not rise to a level which prevented a wide range of activity at the sedentary level).

Having concluded that the ALJ's use of the Grids was not impermissible inasmuch as the non-exertional limitations did not significantly erode the occupational base, and also finding that testimony from a VE was not required at step five, Chavis's arguments to the contrary are without merit and are rejected.

**IV. Conclusion**

For the aforementioned reasons, Chavis's Motion for Judgment on the Pleadings (D.E. 30) is denied, Defendant's Motion for Judgment on the Pleadings (D.E. 32) is granted, and Commissioner's decision is affirmed.

Dated: March 6, 2015.

*Robert T. Numbers II*

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE